IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD T. MORALES,            :      CIVIL ACTION NO. **1:CV-11-0692**
                               :
         Plaintiff             :      (Judge Caldwell)
                               :
         v.                    :      (Magistrate Judge Blewitt)
                               :
JEFFREY A. BEARD, et al.,       :
                               :
         Defendants            :

## REPORT AND RECOMMENDATION

**I. Background.**

On April 14, 2011, Plaintiff Richard T. Morales, an inmate at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), filed the instant civil rights action, pursuant to 42 U.S.C. § 1983, §1985, § 1986 , §1988 and §1997. (Doc. 1). Plaintiff also indicated that he was raising a state law claim under 37 Pa.C.S.A. §93.9. Plaintiff also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates. In his form 3-page original Complaint, Plaintiff named the following 15 Defendants: Jeffrey A. Beard, Department of Corrections ("DOC") Secretary; Region II Commissioner/Director John Doe; Jerald Walsh, SCI-Dallas Superintendent; Vincent Mooney, Deputy Superintendent; Zackarackus, Deputy Superintendent; Mahally, Deputy Superintendent; Norman Demming, Program Review Manager; Security Captain - John Doe; Bureau of Inmate Transfers/Service Director John Doe; Chris Putnam, Unit Manager; Mr. Dragon, Unit Counselor; James Paul, Chaplain; John Doe(s) who approved inmate transfer; Daniel Dougalas, Inmate Classification; and John/Jane Does "who

entered into out of state prison contracts with Virginia State and Governor, Edward Rendell." (Doc. 1, p. 2).

Plaintiff indicated that he filed a grievance regarding his claims but that he could not fully exhaust them since he was "subjected to interference by ways of failure to answer or respond to prisoner complaints; then [he was] subjected to out of state transfers where there was no Pa. State Grievance Remedies or Procedures Available."[1]  (*Id*., p. 1).

Plaintiff's original Complaint did not comport with Fed.R.Civ.P. 8.  Plaintiff alleged that due to overcrowded conditions at SCI-Dallas, he was transferred on April 12, 2010, to a Virginia State Prison.  Plaintiff averred that he had a PA DOC Hair Exemption due to his religious beliefs and that, after he was transferred to a Virginia State Prison, his First Amendment rights were violated because he was forced to "be clean shaven of all head or  facial hair."  Plaintiff stated that this was a violation of his Religious Freedom Rights.  Plaintiff averred that he was refused grievance forms when he requested them, and that he was subjected to "Diesel Therapy" due to his exercising of his First Amendment  rights to free speech, freedom of religion, and right to access the courts. Plaintiff averred that after he was transferred to a Virginia prison and he was made to get a haircut and shave, he was transferred back to SCI-Dallas since he was not supposed to have been

---

[1]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id*.  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

transferred to a Virginia State Prison.   Plaintiff stated that when he arrived back at SCI-Dallas, he was given another PA DOC Hair Exemption.

As relief, Plaintiff requested the right to amend his pleading.   Plaintiff also requested declaratory judgment, injunctive relief, as well as compensatory and punitive damages.   (*Id.*, p. 3).

Since Plaintiff's Complaint did not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants, and it did not  mention any personal involvement of a single Defendant with any cognizable constitutional claim, on April 18, 2011, we directed Plaintiff to file an amended complaint. (Doc. 7).  Plaintiff filed his 16-page typed Amended Complaint with 59 pages of exhibits on May 3, 2011.  (Doc. 8).  We now screen Plaintiff's Amended Complaint as we are obliged to do.[2]

## II.  PLRA.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[4]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

---

[2]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[4]The Plaintiff filed an application to proceed *in forma pauperis* with the State Court and an authorization to have funds deducted from his prison accounts. (Docs.  2 and 3).

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged

---

[5]Plaintiff alleges in his amended pleading that all of the  individual Defendants, except for Rendell, are employees of the PA DOC.  Defendant Rendell was the former Pennsylvania Governor.  (Doc. 8, pp. 2-4).  This is sufficient to show that Defendants are state agents.

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation

of a Plaintiff's constitutional rights."), citing *Rode, supra.*

The Court uses the same standard to screen a complaint under the PLRA as it does for a

12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews

v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**IV.  Motion to Dismiss Standard.**

In  *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to
a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic
Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937
(2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949
(citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states
a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued,
"[d]etermining whether a complaint states a plausible claim for relief will ... be a context-
specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V.  Allegations of Amended Complaint (Doc. 8).

As stated, Plaintiff Morales filed this §1983 civil rights action essentially alleging his First Amendment right to free exercise of religion was violated when he  was made to shave and get a hair cut after his transfer to a Virginia state prison even though he had PA DOC Hair Exemption which should have precluded his placement on the out of state prison transfer list.  In addition to §1983, Plaintiff states that his Amended Complaint is based on §1985, §1997 and "CRIPA 7(a)," and "B.O.C."   (Doc. 8, p. 2).

In his Amended Complaint, Plaintiff names the following Defendants: Edward Rendell, former Governor of Pennsylvania; Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections; Michael Klopotoski, Acting Regional Deputy Secretary of SCI-Dallas; Jerald Walsh, Acting Superintendent of SCI-Dallas; Vincent Mooney, Deputy Superintendent for Facility Management at SCI-Dallas; Mahally, Deputy Superintendent for Security and Operations at SCI-Dallas; Zackarackus, Captain of Security Operations at SCI-Dallas; Norman Demming, Program Review Manager at SCI-Dallas; Chris Putnam, Acting Team Manager of Delta Block at SCI-Dallas; Daniel Dougalas, Acting Inmate Classification and Employment Manager at SCI-Dallas; James Paul, Chaplain in Charge at SCI-Dallas; Donald T. Williamson, Director of PA-DOC Office of Bureau of Inmate Services/Transfers; Andrea Priori-Mental, employee of PA-DOC Bureau of Inmate Classification/Services/Transfers; John/Jane Does 1-13, employees of SCI-Dallas or PA-DOC; and John/Jane Does 14-50, Supervisory Officials or Highest Ranking Persons who entered into Interstate/Outerstate Contracts or Agreements to Transfer Pennsylvania State Prisoners to Virginia State Department of Corrections. (Doc. 8, pp. 2-4).

Plaintiff states that he was sentenced to serve a Pennsylvania state sentence and that he has sincere religious beliefs of the Native American Religion known as Taino Indian, a recognized religion. Plaintiff states that due to his religious beliefs, he was prohibited from having a clean shave. Plaintiff avers that during his incarceration over several years, he would routinely obtain a DOC hair exemption and religious accommodation based on his Taino Indian religion. Plaintiff

states that he feared his Unit Manger Defendant Putnam and his Counselor Dragon[6] would put him on the out of state transfer list when SCI-Dallas was becoming overcrowded as retaliation for his past complaints and grievances.  Plaintiff states that inmates, like himself, who were granted PA-DOC religious accommodations or hair exemptions were not eligible to be placed on the out of state transfer list since it required the inmate to be subject "to clean shaves of the head or facial area."

Plaintiff avers that Defendant Putnam and Counselor Dragon told him that he was not eligible to be placed on the out of state transfer list since he was granted PA DOC a religious accommodation and  hair exemption.

Plaintiff alleges that he also spoke to DOC Secretary Defendant Beard about his fear of being made to cut his hair and his belief he was being retaliated against for his grievances.  Plaintiff states that Defendant Beard told him to follow up the matter with his Unit Manager and Counselor.

Plaintiff states that he had conversations with each Defendant, except for Defendant former Pennsylvania Governor Rendell, about his fear that Defendant Putnam would place him on the out of state transfer list due to his past grievances.  Plaintiff also states that he wrote numerous Inmate Requests to Staff addressed to Defendant Mooney and Defendant Mahally about his fear that Defendant Putnam would place him on the out of state transfer list due to his past grievances. Plaintiff alleges that he did not receive written responses to his Requests and that he personally spoke with Defendants about his fear that Defendant Putnam would retaliate against him by placing

---

[6]Plaintiff named Dragon as a Defendant in his original Complaint, but he did not name Dragon as a Defendant in his Amended Complaint.

him on the out of stat transfer list due to his past grievances.

Plaintiff avers that he wrote and spoke to Defendant Chaplain Paul, and that Defendant Chaplain Paul assured him that his religious accommodation was active in the prison computer system and that Plaintiff was not eligible to be placed on the out of state transfer list.

Plaintiff alleges that he spoke to Defendant Douglas about his fear that he would be placed on the out of state transfer list as retaliation, and to make sure that he was not on the list. Plaintiff avers that Defendant Douglas would not reveal which inmates were on the list and that Dougalas assured him that if he had a valid exemption and religious accommodation, the prison Administration would not transfer him.

Plaintiff avers that he wrote to Defendant Zackarackus since this Defendant was in charge of Security and Security was handling the out of state transfers of inmates. Plaintiff alleges that he told Defendant Zackarackus that he had a religious accommodation, and that this Defendant assured him that he was not going to be placed on the out of state transfer list.

Plaintiff alleges that on April 12, 2010, a John Doe CO and Major told the inmates, including Plaintiff, on the out of state transfer list to pack their belongings. Plaintiff then avers as follows:

47)    When the Plaintiff was told to pack up his belongings he made it again directly known by showing his Religious Accommodations or Exemptions to both the Major and C/O." They reviewed the exemptions and said pack it up, your (sic) on Our list. The Plaintiff, again reiterated this must be a mistake based on all of his Religious Freedom Exemptions or Accommodations. Plaintiff showed proof his exemptions and religious beliefs were Taino-Indian Arawakan Tribe.

48)    The Plaintiff was threatened either do what he is being told or the C.E.R.T. Extraction Team would pack him up and apply force against him making him go to Virginia and to get his haircut off.

49)     Numerous Extraction Team C.E.R.T. Guards then came and stated, "do you want to go the easy way or the hard way.  Plaintiff was cuffed, placed in several restraints and forced to be clean shaven in violation of his First Amendment and despite his Religious Accommodations/Exemptions.

50)     The Plaintiff was then escorted to the SCI-Dallas Barber School, placed in a Barber Chair, and the Barber told 'shave his head clean or bald." Also to shave the Plaintiff's facial hair.

51)     The Plaintiff was then placed on a DOC Bus and subjected to Diesel Therapy in violation of his rights, privileges, immunities.  See USCA 1st, 5th, 6th, 8th, 14th Amendments, 42 Pa.C.S.A. 8850-8855 Willful Misconduct, 42 USCA 1983, 1985, 1986, 1997(a)-(h), CRIPA 7(a), Title 37 Pa.Codes 93.1-93.9(a)(b).

52)     The Plaintiff while housed in Virginia State Prison System then asked for Grievance Forms under the Pennsylvania Department of Corrections DC-ADM-804 and Title 37 Pa.Code 93.9(a)(B), and was told there was none this Virginia.

(Doc. 8, pp. 13-14).

Plaintiff further avers as follows:

55)     The Plaintiff submits that after several months of warehoused in the Virginia Prison System caused by the Over-Crowding in Pa. Prison System at the hands of all the named Defendants' he was subjected to the numerous deprivations and then returned back to Pa.DOC at SCI-Dallas.

56)     That, Plaintiff further submits upon his return back to SCI-Dallas he was told by the named Defendants of SCI-Dallas they apologize for being in the wrong for what happened.  He further was told that someone must of [have] removed his name from the Religious List of Exemptions, which apparently was done to many other inmates intentionally, deliberately, and based upon the inadequate policies, practices, procedures, customs or training of Defendants.

57)     The Plaintiff submits that he seeks this Court to declare each of the named Defendants' had both knowledge or acquiescence to the deprivations of Clearly Established Rights under the 1st, 5th, 8th, 14th Amendments, and for purposes of 42 USCA 1983, 1985(i)(ii)(iii).

(Doc. 8, pp. 14-15).

As relief, Plaintiff requests declaratory and injunctive relief as well as compensatory and punitive damages.  Plaintiff sues the Defendants in both their individual and official capacities.[7] Plaintiff also seeks "mental, emotional, physical damages" against all Defendants in the amount of $150,000 each.  (*Id.*, pp. 17-18).[8]

## VI. Discussion.

As noted, to the extent that Plaintiff is seeking damages for pain and suffering under § 1983, such relief request should be dismissed since Plaintiff fails to allege that he suffered any physical injury.  *See Orikhi v. Wood*, 2006 WL 859543, *7-* 8 (M.D. Pa.)("Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of accompanying physical injury.").  We do not find that Plaintiff has alleged physical injury, and we find that having his hair cut and making him shave does not suffice

---

[7]Plaintiff cannot seek compensatory damages from each named Defendant in both their individual and official capacities.  To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities.  Therefore, Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

[8]Plaintiff cannot obtain compensatory damages for mental and emotional distress since he does not allege any physical injury.  *See Allah v. Al-Hafeez*, 226 F. 3d 247, 251 (3d Cir. 2000); *Kantamanto v. King*, 651 F. Supp. 2d 313, 320, n. 1 (E. D. Pa. 2009).   Thus, this claim for relief should be dismissed.

to properly state a claim of physical injury.[9]  Thus, we will recommend that Plaintiff's claim for

damages for pain and suffering  be dismissed from his Amended Complaint.

Also, as noted, we will recommend that Plaintiff's claims for monetary damages against

Defendants in their official capacities be dismissed.  *See Meekins, supra.*

Plaintiff basically alleges violations of his religious rights under the First and Fourteenth

Amendments, pursuant to §1983, due to his improper transfer from SCI-Dallas to a Virginia state

prison and making him get a hair cut and shave despite his hair cut exemption granted by the PA

DOC.

Initially, with respect to all fifty (50) of the John/Jane Doe Defendants, *i.e.* John/Jane Does

1-13, who were employed at SCI-Dallas and who signed, approved or voted for Plaintiff's transfer

to a Virginia state prison, and John/Jane Does 14-50, supervisor officials who entered into the

Interstate Contracts or Agreements to transfer Pennsylvania state prisoners to Virginia state prisons,

we find that their personal involvement with respect to the alleged violations of Plaintiff's

constitutional rights is not sufficiently stated.

---

[9]As stated above, the law is clear that an inmate cannot recover for emotional injury if no physical harm is stated.  In this case, Plaintiff's only possible  claim of physical harm is his hair cut and shave, and this is clearly insufficient to amount to the requisite harm necessary to seek damages for mental injury.   Money damages for his emotional distress are precluded since he has not alleged physical  injury.  *See* 42 U.S.C. § 1997e(e).  The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury.  Thus, a claim for money damages for mental anguish is precluded.  *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251(3d Cir. 2000).

In *Thompson v. PA DOC*, 2007 WL 404056, *1-*2 (M.D. Pa. 2-1-07), the Court stated:

> The DOC has an inmate Hygiene and Grooming Policy, DC-ADM 807. The Policy provides, in pertinent part "Hair that does not fall below the top of the collar (afro styles no longer than four inches) shall be permitted[.] Section E of DC-ADM 807 sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:
>
> 1.      Exceptions to the provisions of this directive may be granted for legitimate religious reasons on a case by case basis. The following procedures are to be followed to request/obtain a religious exemption:
>
> 1. The inmate must provide a written request for a haircut exemption to the Facility Chaplaincy Program Director (F.C.P.D.)
>
> 2. The request must indicate the religious conviction upon which the exemption is based.
>
> 3. All inmates requesting a haircut exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion[.]
>
> 4. The F.C.P.D., after speaking with the inmate, determines the validity of the request.
>
> 5. The F.C.P.D. shall notify the Superintendent or designee of the determination and recommendation[.]
>
> 6. The Superintendent's decision is sent to the F.C.P.D. who, in turn, notifies the appropriate staff and inmate[.]
>
> 7. In cases where the F.C.P.D. cannot make an appropriate determination, the Facility Chaplaincy Program Director must submit all written information to the Administration of Religion and Family Services for review and recommendation.

8. The exemption will be lifted if there is a change in the status of the inmate, e.g. converts to another religion which does not require an exemption to hair length.

DC-ADM 807-2-3.

The *Thompson* Court also stated:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I. In *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.
> It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier*, 417 U.S. 817, 822-23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.
>
> The Court of Appeals for the Third Circuit has upheld the validity of the hair length regulations of DC-ADM 807. *See Wilson v. Schillinger*, 761 F.2d 921 (1985). *Cole v. Flick*, 758 F.2d 124 (3d Cir.), *cert. denied*, 474 U.S. 921, 106 S.Ct. 253, 88 L.Ed.2d 260 (1985), *Dreibelbis v. Marks*, 742 F.2d 792 (1984). The Court of Appeals Circuit found that the justifications for the policy, including, *inter alia*, (1) internal security, insofar as long hair could be used to conceal or transport contraband, including weapons or drugs, or by thwarting identification; (2) sanitation concerns, in that long hair increases the risk of lice and infection, particularly with respect to those inmates working in mail and food services; and (3) to prevent the possibility that institutional security would be jeopardized by selective

14

enforcement of institutional directives, were all clearly legitimate in that they are directly related to prison security, and that DC-ADM 807 did not represent an exaggerated response to those concerns. *See Cole, supra.*

*Id.*, *2-*3.

Plaintiff Morales does not challenge the DOC hair length regulations and exemptions. Rather, he claims that he was improperly placed on the out of state transfer list, transferred to Virginia, and made to get a hair cut and shave despite his DOC hair exemption and despite knowing that he was not an appropriate inmate for the list due to his exemption.  Plaintiff states that he was placed on the transfer list as retaliation for the grievances he filed in the past.

Plaintiff does not sufficiently allege that any of the 50 Doe Defendants improperly placed him on the out of state transfer list as retaliation for his grievances, and that they transferred him to a Virginia state prison where he was  made to get a hair cut and shave despite his DOC hair exemption and despite knowing that he was not an appropriate inmate for the list due to his exemption.   Therefore, we will recommend that all fifty (50) of the John/Jane Doe Defendants be dismissed.

We find that supervisory state officials Rendell, Beard, Walsh  and Klopotoski are named as Defendants based only on *respondeat superior*.   Plaintiff admits that he never personally approached Defendant Rendell about his concerns over the criteria for inmates placed on the out of state transfer list.  (Doc. 8, p. 10).   With respect to DOC Secretary Defendant Beard, Plaintiff merely alleges that he spoke to Beard when Beard was making rounds in the prison  and that he complained that "he feared being made to cut his hair and he felt that he was being retaliated against for filing Complaints or Grievances."  Plaintiff avers that Defendant Beard told him to follow

his chain of command and to take the matter up with his Counselor and Unit Manager.  (*Id.*, pp.

9-10).  Plaintiff also avers that he spoke or wrote to Defendant Superintendent Klopotoski, and that

Klopotoski told him to file grievances on Defendant Chaplain Paul.  (*Id.*, p. 10).  We do not find any

specific allegations against Defendant Superintendent Walsh in Plaintiff's Amended Complaint.

Plaintiff does not allege that Defendants Rendell, Beard, Walsh and Klopotoski played any

role in the decision to place him on the out of state transfer list or that they were retaliating against

him for his past grievances.  Further, we find no allegations made by Plaintiff as against Defendants

Williamson (No. 14) and Priori-Meintal (No. 15) in his Amended Complaint.

As stated, it is well established that personal liability in a civil rights action cannot be imposed

upon an official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a civil rights case and that a complaint must allege

such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*,

845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal

involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009),

the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants former Governor Rendell, DOC Secretary Beard, Deputy Secretary Klopotoski, Superintendent Walsh, Williamson, and Priori-Meintal with respect to any of his constitutional claims.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10);  *Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

Therefore, we will recommend that Defendants supervisory state officials  Rendell, Beard, Walsh, Klopotoski, Williamson and Priori-Meintal be dismissed with prejudice.[10]

We also find that Plaintiff has failed to state the personal involvement of Defendant Dougalas with respect to any violation of his constitutional rights.  Plaintiff only alleges that he spoke to Defendant Douglas about his fear that there may be an orchestrated attempt to place him on the out of state transfer list as retaliation, and that Dougalas responded by telling Plaintiff that the inmates' names on the list were confidential, that he could not tell Plaintiff who was on the list, and that he would check the list but did not believe Plaintiff was on it since he had a religious accommodation or hair exemption.  (*Id.*, pp. 11-12).

Plaintiff does not allege that Defendant Dougalas played any role in the decision to place him on the out of state transfer list or that Dougalas was retaliating against him for his past grievances.  Therefore, we will recommend that Defendant Dougalas be dismissed with prejudice.

With respect to Defendants Deputy Superintendents Mooney and Mahally, Plaintiff avers as follows:

> 39)    The Plaintiff then wrote numerous DC-135A Requests to Staff
> Members to Deputy Superintendents, Vincent Mooney, Deputy

---

[10]Since Plaintiff was already given one opportunity to amend his Complaint, we do not recommend that he be given a second chance to amend his pleading regarding any Defendants whom we recommend be dismissed.

Superintendent, Mahally with his verbal complaints of fear he would
be retaliated by transfers due to what his Unit Manager, Chris Putnam.
(sic).

40)     After not receiving any written responses back, when said
Defendants were making their rounds on D-Block Housing Unit,
Plaintiff personally spoke [to] the Defendants.  During the meeting
Plaintiff stated, he had sent DC-135A Requests to Staff, asking if
they received them.  In response the Defendants' responded that it was
received, so since I'm in person refresh their memories more with
the details.  Plaintiff made it known that he I'm (sic) filing Grievances and
Complaints about his Religious Accommodations under DC-ADM-819 and
DC-ADM-804.  Plaintiff also made it clear he was Taino Native American
Religion.  As such he feared Unit Manager, Putnam and Counselor, Dragon,
as well as Administration would in fact make good on their retaliations
by ways of placing him on the Out of State Transfer list.  Both Defendants' (sic)
stated they would have to further investigate and since he falls under the
Religious Accommodations or Exemptions that he wasn't eligible or to be
placed on any Out of State Transfer list caused by it required being
subject to clean shaves of the head or facial areas.

(Doc. 8, pp. 10-11, ¶'s 39-40).

Plaintiff does not allege that Defendants Mooney and Mahally played any role in the decision to place him on the out of state transfer list or that they were retaliating against him for his past grievances.  Therefore, we will recommend that Defendants Mooney and Mahally be dismissed with prejudice.

Further, to the extent that Plaintiff is claiming Defendant Demming violated his constitutional rights regarding his response to his grievance (Doc. 8, p. 8, ¶ 28), we find that this Defendant should be dismissed.

A prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action.  The law is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor*

*Union, Inc.,* 433 U.S. 119, 137-138 (1977).   This very Court has also recognized that grievance procedures are not constitutionally mandated.   *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).   Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action.   *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).   *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).   Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.   *Burnside, supra*.

In light of the well-settled case law of this District, we find that Defendant Demming is entitled to dismissal with prejudice regarding Plaintiff's claim involving Demming's response to his grievance.

As stated, in screening Plaintiff's Amended Complaint, we find that he has stated a constitutional claim under the First Amendment and the Fourteenth Amendment that his right to religious freedom was violated by only Defendants Putnam, Chaplain Paul and Zackarackus.   We find that Plaintiff has sufficiently stated the personal involvement of Defendants Putnam, Chaplain Paul and Zackarackus with respect to his constitutional claim of a violation of his right to freedom of religion under the First Amendment and Fourteenth Amendment.

In *Branch v. Russian*, 2005 WL 1137879, * 7 (M.D. Pa.), this Court stated:

> Individuals have a constitutionally protected right to follow the
> religious teachings and practices of their choice.  *Employment Div. v.
> Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876
> (1990). This right may be limited by law of general applicability,
> restricting both religious and non-religious conduct, but reasonable
> accommodations for religious observance may be required in
> certain circumstances.  *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205,
> 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).  Particularly in the
> prison context, where inmates are precluded from engaging in a
> variety of otherwise permissible activities, officials may be
> required to provide exemptions from restrictions that place a
> "substantial burden" on an inmate's adherence to "sincerely held
> religious beliefs," unless the officials offer compelling reasons for
> refusing such accommodation.  *See* 42 U.S.C. § 2000cc-1(a);
> *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that DC-ADM 807, Hygiene and Grooming Policy,

violated his right to free exercise of religion.  This Court found that Plaintiff Branch failed to

establish the threshold element of such a claim, since he did not explain how long hair affected his

religious beliefs and only alleged that he took a vow requiring him to keep long hair.  Thus, Plaintiff

Branch did not establish a burden on the exercise of his religion.

In *Hennis v. Tedrow*, 2011 WL 1230337, *10 (W.D. Pa. 3-31-11), the Court stated:

> "The mere assertion of a religious belief does not automatically
> trigger First Amendment protections, however. To the contrary, only those
> beliefs which are both sincerely held and religious in nature are
> entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51
> (3d Cir.2000); *see also Sutton v. Rasheed,* 323 F.3d 236, 250–51
> (3d Cir.2003).
>
> Once a sincerely held religious belief has been demonstrated, an inmate may
> show that a prison regulation or practice violates the right to free exercise
> of religion by showing that it does not pass the "reasonableness test" set
> forth in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987),
> and *O'Lone,* 482 U.S. at 349. This test examines the following four

21

factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 415–18, 109 S.Ct. 1874, 104 L.Ed.2d 459; *Turner,* 482 U.S. at 89–91. These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." *Ramzidden v. Monmouth County Sheriff Dept.,* No. 09–4829, 2010 WL 1752540, at *11 (D.N.J. Apr.30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, *Thornburgh,* 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. *Williams v. Morton,* 343 F.3d 212, 217 (2003) (citing *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)).

As discussed above, we find that Plaintiff Morales has alleged he had sincerely held religious beliefs, and that he has sufficiently stated the personal involvement of only Defendants Putnam, Chaplain Paul and Zackarackus with respect to his free exercise of religion claim under the First Amendment and Fourteenth Amendment.[11]   We find that Plaintiff only avers that he was impeded in his practice of his Taino Religion by Defendants Putnam, Chaplain Paul and Zackarackus.  We do not find that Plaintiff has sufficiently alleged that he was impeded in his practice of his Taino Religion by any of the other Defendants.

---

[11]   The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

Additionally, we find that Plaintiff has sufficiently stated the personal involvement of only Defendant Putnam respect to his First Amendment retaliation claim.  We find that Plaintiff only alleges Defendant Putnam retaliated against him for his past grievances by having him placed on the out of state transfer list despite his DOC hair exemption.

In *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir.2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah,* 229 F.3d at 225).

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL 3741840, 1 (3d Cir.2006). While inmates "do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment ..., lawful incarceration brings about withdrawal or limitation of privileges and rights for various reasons, including institutional security." *Cooper v. Tard,* 855 F.2d 125, 128 (3d Cir.1988); *see also, Pell v. Procunier,* 417 U.S. 817, 822 (1974) (stating that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

Plaintiff Morales had a First Amendment right to file grievances.  *See Mincy v. Chmielewski,* 2007 WL 707344,*6("The filing of a grievance clearly falls within the ambit of the First Amendment.")(citation omitted).  We find that Plaintiff Morales has also met the second element of a retaliation claim as against Defendant Putnam.  "Adverse government actions that have been deemed sufficient to support a retaliation claim include ... ; transferring a prisoner to a distant prison." *Wheeler v. Beard*, 2005 WL 1840159, *3 (E.D. Pa. 8-3-05)(citation omitted).  Further, we find that Plaintiff has also sufficiently stated that there was a causal link between his past grievances

and adverse action taken against him by Defendant Putnam, his Unit Manager.  (Doc. 8, pp. 9-10).
As mentioned, we do not find that Plaintiff has stated the personal involvement of any other
Defendants with respect to his First Amendment retaliation claim.

Based on Plaintiff's amended pleading, we find that this case should proceed only as against
Defendants Putnam, Chaplain Paul and Zackarackus with respect to Plaintiff's First Amendment
Free Exercise of Religion claim.  We find this case should proceed only as against Defendant
Putnam with respect to Plaintiff's First Amendment retaliation claim.

As stated, Plaintiff indicates that he also raises claims in Amended Complaint under §1985.
(Doc. 8, p. 2).  Plaintiff appears to base his claim under §1985 on a conspiracy.  Plaintiff seems to
allege that  he was being subjected to an "orchestrated meeting of the minds that were designed
to retaliate [against him] by ways of placing him on the out of state transfer list."  (Doc. 8, p. 11).

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C.
> § 1985(3) are set forth in a line of Supreme Court cases beginning with the
> decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d
> 338 (1971). There, the Supreme Court clarified that the reach of section 1985(3)
> is limited to private conspiracies predicated on "racial, or perhaps otherwise
> class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798.
> The Court strictly construed the requirement of class-based invidious
> animus in *United Brotherhood of Carpenters and Joiners of America, Local
> 610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding
> that commercial and economic animus could not form the basis for a section
> 1985(3) claim.
>
> *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997). Consistent with these
> decisions, a plaintiff must allege the following elements in order to state
> a claim pursuant to 42 U.S.C. § 1985(3):
>
> (1) a conspiracy; (2) motivated by a racial or class based discriminatory
> animus designed to deprive, directly or indirectly, any person or class of persons

to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3). Instead, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v. Marrow*, 2009 WL 3103781, *6 citing *Majewski v. Luzerne County*, 2007 WL 1074769 (M.D. Pa. 4-9-07); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted).

Plaintiff Morales seems to state that he falls within a class entitled to protection afforded by §1985(3).   However, Plaintiff does not state that the alleged conspiracy "was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006). Thus, we will recommend that Plaintiff 's claim under §1985(3) against all Defendants be dismissed with prejudice.

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that all of Plaintiff's constitutional claims under §1983 be dismissed with prejudice as against all Defendants except for Defendants Putnam, Chaplain Paul and Zackarackus. It is recommended that Plaintiff's First Amendment Free Exercise of Religion claim be allowed to proceed as against  Defendants Putnam, Chaplain Paul and Zackarackus.   It is also recommended that this case be allowed to proceed only as against

Defendant Putnam with respect to Plaintiff's First Amendment retaliation claim.[12]   It is recommended that Plaintiff's claims under §1985 be dismissed as against all Defendants.   It is further recommended that Plaintiff's claim for damages for pain and suffering  be dismissed from his Amended Complaint.  Also, it is recommended  that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.

Finally, it is recommended that this case be remanded to the undersigned for further proceedings as against Defendants Putnam, Paul and Zackarackus.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 22, 2011**

---

[12]Notwithstanding Plaintiff Morales's *pro se* status and our finding that all of his constitutional claims be dismissed with prejudice as against all Defendants except for Defendants Putnam, Chaplain Paul and Zackarackus, we do not recommend that he again be permitted leave to file a Second Amended Complaint regarding any of his claims, since we find that the Plaintiff's detailed allegations fail to state any constitutional violation against all Defendants except for Defendants Putnam, Chaplain Paul and Zackarackus.  Thus, we find futility of any further amendment of Plaintiff's claims as against the Defendants whom we recommend be dismissed.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD T. MORALES,                   :        CIVIL ACTION NO. **1:CV-11-0692**
                                      :
            Plaintiff                 :        (Judge Caldwell)
                                      :
            v.                        :        (Magistrate Judge Blewitt)
                                      :
JEFFREY A. BEARD, et al.,             :
                                      :
            Defendants                :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 22, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
_____      THOMAS M. BLEWITT
                                        United States Magistrate Judge


**Dated: June 22, 2011**