IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD T. MORALES, | : | CIVIL ACTION NO. **1:CV-11-0692** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CHRIS PUTNAM, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On April 14, 2011, Plaintiff Richard T. Morales, an inmate at the State Correctional

Institution at Dallas, Pennsylvania ("SCI-Dallas"), filed the instant civil rights action, pursuant to

42 U.S.C. § 1983, §1985, § 1986 , §1988 and §1997.  (Doc. 1).  Plaintiff also indicated that he was

raising a state law claim under 37 Pa.C.S.A. §93.9.  Plaintiff also filed a Motion for leave to proceed

*in forma pauperis*. (Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates.

In his form 3-page original Complaint, Plaintiff named the following 15 Defendants:  Jeffrey A.

Beard, Department of Corrections ("DOC") Secretary;  Region II Commissioner/Director John Doe;

Jerald Walsh, SCI-Dallas Superintendent; Vincent Mooney, Deputy Superintendent; Zackarackus,

Deputy Superintendent; Mahally, Deputy Superintendent; Norman Demming, Program Review

Manager;  Security Captain - John Doe; Bureau of Inmate Transfers/Service Director John Doe;

Chris Putnam, Unit Manager; Mr. Dragon, Unit Counselor; James Paul, Chaplain; John Doe(s) who

approved inmate transfer; Daniel Dougalas, Inmate Classification; and John/Jane Does "who

entered into out of state prison contracts with Virginia State and Governor, Edward Rendell."[1] (Doc. 1, p. 2).

In his original Complaint, Plaintiff indicated that he filed a grievance regarding his claims but that he could not fully exhaust them since he was "subjected to interference by ways of failure to answer or respond to prisoner complaints; then [he was] subjected to out of state transfers where there was no Pa. State Grievance Remedies or Procedures Available."[2]  (Id., p. 1).

Plaintiff's original Complaint did not comport with Fed.R.Civ.P. 8.  Plaintiff  alleged  that due to overcrowded conditions at SCI-Dallas, he was transferred on April 12, 2010, to a Virginia State Prison.  Plaintiff averred  that he had a PA DOC Hair Exemption due to his religious beliefs and that, after he was transferred to a Virginia State Prison, his First Amendment rights were violated because he was forced to "be clean shaven of all head or  facial hair."   Plaintiff stated that this was a violation of his Religious Freedom Rights.  Plaintiff averred that he was refused grievance forms

---

[1]We note that the correct spelling of the last name of Defendant Chaplain "Paul" is "Pall."  (Doc. 29, Ex. B).  As such, we use the correct spelling of this Defendant's name herein.
We also note that the correct spelling of the last name of Defendant Major "Zackarackus" is "Zackarauskas."  (Doc. 29, Ex. C).  As such, we use the correct spelling of this Defendant's name herein.

[2]In screening Plaintiff's original Complaint, we noted that Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004); Woodford v. Ngo, 126 S.Ct. 2378 (2006).  In Porter v. Nussle, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The Porter Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Id.   However, we also noted that Defendants had the burden to plead and prove exhaustion as an affirmative defense.  See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

when he requested them, and that he was subjected to "Diesel Therapy" due to his exercising of his First Amendment  rights to free speech, freedom of religion, and right to access the courts. Plaintiff averred that after he was transferred to a Virginia prison and he was made to get a haircut and shave, he was transferred back to SCI-Dallas since he was not supposed to have been transferred to a Virginia State Prison.   Plaintiff stated that when he arrived back at SCI-Dallas, he was given another PA DOC Hair Exemption.

As relief, Plaintiff requested the right to amend his pleading.   Plaintiff also requested declaratory judgment, injunctive relief, as well as compensatory and punitive damages.  (*Id.*, p. 3).

Since Plaintiff's original Complaint did not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants, and it did not  mention any personal involvement of a single Defendant with any cognizable constitutional claim, on April 18, 2011, we directed Plaintiff to file an amended complaint. (Doc. 7).   Plaintiff filed his 16-page typed Amended Complaint with 59 pages of exhibits on May 3, 2011.  (Doc. 8).  We then screened Plaintiff's Amended Complaint as we were obliged to do.[3]

On June 22, 2011, we issued a Report and Recommendation ("R&R") and recommended that all of Plaintiff's constitutional claims under §1983 be dismissed with prejudice as against all Defendants except for Defendants Putnam, Chaplain Pall and Zackarauskas. (Doc. 9).[4]  We recommended that Plaintiff's First Amendment Free Exercise of Religion claim be allowed to

---

[3]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

[4]*See also* 2011 WL 2938225 (M.D. Pa. 6-22-11) adopted by 2011 WL 2930985 (M.D. Pa. 7-19-11).

proceed as against Defendants Putnam, Chaplain Pall and Zackarauskas. We also recommended that this case be allowed to proceed with respect to Plaintiff's First Amendment retaliation claim only as against Defendant Putnam. Additionally, we recommended that Plaintiff's claims under §1985 be dismissed as against all Defendants. We further recommended that Plaintiff's claim for damages for pain and suffering be dismissed from his Amended Complaint. Also, we recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.

Finally, we recommended that this case be remanded to the undersigned for further proceedings as against Defendants Putnam, Pall and Zackarauskas.

On July 19, 2011, the Court adopted our R&R. (Doc. 11). On July 21, 2011, we directed service of Plaintiff's Doc. 8 Amended Complaint upon the remaining Defendants. (Doc. 12). An Answer to the Complaint was filed by all Defendants on September 19, 2011. A Scheduling Order was issued on November 22, 2011, establishing a discovery deadline of December 21, 2011, and a dispositive motions deadline of January 23, 2012. (Doc. 17).

After the completion of discovery, including the deposition of Plaintiff on January 23, 2012, Defendants Putnam, Pall and Zackarauskas jointly filed, in a timely manner, a Motion for Summary Judgment **(Doc. 26)**, together with a Brief in support of the Motion and a Statement of Material Facts ("SMF") with an Appendix of Exhibits. (Docs. 27, 28 & 29). Plaintiff was granted an extension of time to file his opposition brief to March 12, 2012. (Docs. 30 & 31). Plaintiff failed to file his opposition brief as directed. Rather, on March 13, 2012, Plaintiff filed a 3-page typed Motion to Vacate the Summary Judgment Deadline Date. (Doc. 40).

As relief in his Doc. 40 Motion, Plaintiff requested that the Court vacate its scheduling order with the above stated deadlines, and re-open the discovery process for 45 days and to then set a new dispositive motion deadline. Plaintiff also requested that the Court direct Defendants to provide him with copies of the transcripts from all the depositions taken in this case or to allow him to purchase his copies of them. On March 15, 2012, we granted, in part, and denied, in part, Plaintiff's Doc. 40 Motion. We allowed Plaintiff to purchase copies of the transcripts from all the depositions taken in this case. Defendants were directed to make available to Plaintiff copies of the transcripts from all the depositions taken in this case. However, we stated that while Plaintiff must bear the costs of the deposition transcripts. We denied Plaintiff's request to re-open the deadlines and the discovery process in this case. We granted Plaintiff one further extension of time of 30 days from the date of our Order to file his opposition brief to Defendants' Summary Judgment Motion and his response to Defendants' SMF. (Doc. 41).

On April 16, 2012, Plaintiff filed his opposition brief to Defendants' Summary Judgment Motion and his response to Defendants' SMF. (Docs. 42 & 43). On April 27, 2012, Defendants filed their reply brief. (Doc. 44). Defendants' Summary Judgment is ripe for disposition.

## II. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009

WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation

---

[5]Plaintiff alleged in his amended pleading that all of the remaining Defendants were employees of the PA DOC.  It is not disputed that the remaining Defendants are state agents.

of a Plaintiff's constitutional rights.")(citing *Rode, supra)*.

**III. Summary Judgment Standard.**

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law. *Anderson*,  477 U.S. at 248.  "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true

and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90. "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

**IV. Allegations of Amended Complaint (Doc. 8).**

The three remaining Defendants are: Zackarauskas, former Captain of Security Operations at SCI-Dallas;  James Pall, Chaplain in Charge at SCI-Dallas; and at SCI-Dallas Unit Manager Putnam.[6]   As stated, Plaintiff Morales filed this §1983 civil rights action essentially alleging his First Amendment right to free exercise of religion was violated when he  was made to shave and get a hair cut after his transfer to a Virginia state prison even though he had PA DOC Hair Exemption which should have precluded his placement on the out of state prison transfer list. Plaintiff also alleges that Defendant Putnam deliberately put him on the out of state prison transfer list despite his hair length exemption as retaliation for his past complaints and grievances he filed against prison staff.

Specifically, Plaintiff stated that he was sentenced to serve a Pennsylvania state sentence and that he had sincere religious beliefs of the Native American Religion known as Taino Indian, a recognized religion.  Plaintiff stated that due to his religious beliefs, he was prohibited from having a clean shave.  Plaintiff averred that during his incarceration in state prisons over several years, he would routinely obtain a DOC hair exemption and religious accommodation based on his Taino Indian religion.  Plaintiff stated that he feared his Unit Manger Defendant Putnam and his Counselor

_____

[6]Zackarauskas was the Security Captain at SCI-Dallas from January 2006 through December 2009, and he is now a Major at SCI-Dallas. (Doc. 29, Ex. C). It is not disputed that during all relevant times of this case Zackarauskas was a Major.  (Doc. 28, ¶ 4 & Doc. 43, ¶ 4). It is also not disputed that Defendant Chaplain Pall maintained SCI-Dallas' master list of inmates with hair length exemptions. (Doc. 28, ¶ 9 & Doc. 43, ¶ 9).  Further, it is not disputed that Defendant Putnam had no role in selecting which inmates were transferred from SCI-Dallas. (Doc. 29, Ex. A, ¶ 4).

Dragon[7] would put him on the out of state prison transfer list when SCI-Dallas was becoming overcrowded as retaliation for his past complaints and grievances he filed against prison staff. Plaintiff stated that inmates, like himself, who were granted PA-DOC religious accommodations or hair exemptions were not eligible to be placed on the out of state prison transfer list since it required the inmate to be subjected "to clean shaves of the head or facial area."

Plaintiff averred that Defendant Putnam and Counselor Dragon told him that he was not eligible to be placed on the out of state transfer list since he was granted PA DOC a religious accommodation and hair exemption. Plaintiff stated that he had conversations with prison staff, including the former Defendants, about his fear that Defendant Putnam would place him on the out of state transfer list due to his past grievances. Plaintiff also stated that he wrote numerous Inmate Requests to Staff addressed to prison officials about his fear that Defendant Putnam would place him on the out of state transfer list due to his past grievances. Plaintiff alleged that he did not receive written responses to his Requests and that he personally spoke with the former Defendants about his fear that Defendant Putnam would retaliate against him by placing him on the out of stat transfer list due to his past grievances.

Plaintiff averred that he wrote and spoke to Defendant Chaplain Pall, and that Pall assured him that his religious accommodation was active in the prison computer system and that Plaintiff was not eligible to be placed on the out of state transfer list. Plaintiff averred that other prison staff assured him that if he had a valid hair exemption and religious accommodation, the prison

---

[7]Plaintiff named Dragon as a Defendant in his original Complaint, but he did not name Dragon as a Defendant in his Amended Complaint.

Administration would not transfer him.

Plaintiff averred that he wrote to Defendant Zackarauskas  since this Defendant was in charge of Security and the security department was handling the out of state transfers of inmates. Plaintiff alleged that he told Defendant Zackarauskas that he had a religious accommodation, and that this Defendant assured him that he was not going to be placed on the out of state transfer list.

Plaintiff alleged that on April 12, 2010, a John Doe CO and a Major told the inmates who were on the out of state transfer list, including Plaintiff, to pack their belongings.  Plaintiff then averred as follows:

47)     When the Plaintiff was told to pack up his belongings he made it again directly known by showing his Religious Accommodations or Exemptions to both the Major and C/O."  They reviewed the exemptions and said pack it up, your (sic) on Our list.  The Plaintiff, again reiterated this must be a mistake based on all of his Religious Freedom Exemptions or Accommodations.  Plaintiff showed proof his exemptions and religious beliefs were Taino-Indian Arawakan Tribe.

48)     The Plaintiff was threatened either do what he is being told or the C.E.R.T. Extraction Team would pack him up and apply force against him making him go to Virginia and to get his haircut off.

49)     Numerous Extraction Team C.E.R.T. Guards then came and stated, "do you want to go the easy way or the hard way.  Plaintiff was cuffed, placed in several restraints and forced to be clean shaven in violation of his First Amendment and despite his Religious Accommodations/Exemptions.

50)     The Plaintiff was then escorted to the SCI-Dallas Barber School, placed in a Barber Chair, and the Barber told 'shave his head clean or bald." Also to shave the Plaintiff's facial hair.

51)     The Plaintiff was then placed on a DOC Bus and subjected to Diesel Therapy in violation of his rights, privileges, immunities.  See USCA 1st, 5th, 6th, 8th, 14th Amendments, 42 Pa.C.S.A. 8850-8855 Willful Misconduct, 42 USCA 1983, 1985, 1986, 1997(a)-(h), CRIPA 7(a), Title 37 Pa.Codes 93.1-93.9(a)(b).

52)    The Plaintiff while housed in Virginia State Prison System then asked for Grievance Forms under the Pennsylvania Department of Corrections DC-ADM-804 and Title 37 Pa.Code 93.9(a)(B), and was told there was none this Virginia.

(Doc. 8, pp. 13-14).

Plaintiff further averred as follows:

55)    The Plaintiff submits that after several months of warehoused in the Virginia Prison System caused by the Over-Crowding in Pa. Prison System at the hands of all the named Defendants' he was subjected to the numerous deprivations and then returned back to Pa.DOC at SCI-Dallas.

56)    That, Plaintiff further submits upon his return back to SCI-Dallas he was told by the named Defendants of SCI-Dallas they apologize for being in the wrong for what happened.  He further was told that someone must of [have] removed his name from the Religious List of Exemptions, which apparently was done to many other inmates intentionally, deliberately, and based upon the inadequate policies, practices, procedures, customs or training of Defendants.

57)    The Plaintiff submits that he seeks this Court to declare each of the named Defendants' had both knowledge or acquiescence to the deprivations of Clearly Established Rights under the 1st, 5th, 8th, 14th Amendments, and for purposes of 42 USCA 1983, 1985(i)(ii)(iii).

(Doc. 8, pp. 14-15).

As relief, Plaintiff requested declaratory and injunctive relief as well as compensatory and

punitive damages.  Plaintiff sued the Defendants in both their individual and official capacities.[8]

Plaintiff also sought "mental, emotional, physical damages" against all Defendants in the amount

---

[8]As stated above, Plaintiff's claims for monetary damages against Defendants in their official capacities were dismissed and his claims for damages for mental and emotional distress were dismissed.

of $150,000 each.  (*Id.*, pp. 17-18).

## V. Discussion.

Plaintiff basically alleges violations of his religious rights and retaliation under the First and Fourteenth Amendments, pursuant to §1983, due to his improper transfer from SCI-Dallas to a Virginia state prison and making him get a hair cut and shave despite his hair cut exemption granted by the PA DOC.

Initially, with respect Defendant Major Zackarauskas, we agree with Defendants that Plaintiff has conceded Zackarauskas had no personal involvement with respect to the alleged violations of his constitutional rights and, that Plaintiff has conceded Zackarauskas is entitled to summary judgment.  (Doc. 44, p. 5, n. 1 & Doc. 43, ¶ 15 & Doc. 42, p. 7). Additionally, as Defendants point out in their SMF (Doc. 28, ¶ 24), during his deposition, Plaintiff admitted that Defendant Zackarauskas had no personal involvement with respect to the alleged violations of his constitutional rights.  (Doc. 29, Ex. G, pp. 28-29).   As stated, it is a prerequisite in a §1983 action that each named defendant must be shown by Plaintiff  to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  Also, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*.  *See*, *e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.

Thus, we will recommend that the Court grant Defendants' Summary Judgment Motion with respect to Defendant Major Zackarauskas.

As their first argument in their Summary Judgment support Brief, Defendants assert that Plaintiff failed to exhaust his available DOC administrative remedies, prior to filing his original Complaint, with respect to his stated remaining Free Exercise of Religion and retaliation claims. (Doc. 27, pp. 4-7).   Defendants submitted  exhibits to support their contention.   (Doc. 29, Appendix).   Also, as stated, Defendants filed their SMF and have cited evidence to support all of their 36 paragraphs  (Doc. 28), as required by Local Rule 56.1, M.D. Pa., which support their contention that Plaintiff did not exhaust his available DOC administrative remedies. (Doc. 28, ¶'s 25-36).[9]  Plaintiff, as mentioned, filed his paragraph-by-paragraph response to Defendants' SMF as he was obliged to do.   (Doc. 43).   While Plaintiff's paragraph-by-paragraph response to Defendants' SMF do not exactly match up with Defendants' paragraphs, we were able to sufficiently follow Plaintiff's responses.

Additionally, all of Defendants' SMF which pertain to their failure to exhaust argument were supported with citation to evidence.  (Doc. 28, ¶'s 25-36).  More importantly, Plaintiff did not dispute  Defendants' SMF which pertain to their failure to exhaust argument and he did not offer any evidence to dispute Defendants' evidence which shows that he failed to exhaust his present claims against Defendants.  In fact, Plaintiff conceded and agreed to Defendants' SMF (Doc. 28, ¶'s 25-36) which pertain to their failure to exhaust argument.  (Doc. 43, ¶'s 16, 17 & 19). However,

---

[9]Paragraph 37 of Defendants' SMF (Doc. 28) contains a legal conclusion and is not a proper statement of fact.

as discussed below, Plaintiff does contend that during his confinement in Virginia, the PA DOC

grievance procedure was not available to him and that he was not able to exhaust his administrative

remedies regarding his present claims.

Defendants have undisputedly shown that Plaintiff did not fully and properly exhaust his

DOC administrative remedies with respect to his claims against them.[10]   Specifically, we find that

the undisputed evidence shows as follows:

29.     On November 10, 2010–after Plaintiff had returned from Virginia–
Plaintiff filed Grievance No. 342441, a true and correct copy of
which is attached in the Appendix [Doc. 29] as Exhibit I-1; *see
also* Declaration of Robin Lucas, a true and correct copy of which
is attached in the Appendix as Exhibit I.

30.     In this grievance, Plaintiff claims to have filed a previous grievance
related to his hair-length exemption to which he had not yet
received a response. (*See* Ex. I, ¶¶ 6-7).

31.     Grievance No. 342441 was referred to Chaplain Pall.  (Ex. I, ¶ 8;
Ex. B, ¶ 11). Chaplain Pall then met with the Plaintiff to discuss
Plaintiff 's concerns regarding his hair-length exemption and his
transfer to Virginia.  (Ex. B, ¶ 12).

32.     Chaplain Pall explained to Plaintiff that at some point prior to the
Virginia transfer, Plaintiff 's name had somehow been dropped
from the list of inmates with religious hair-length exemptions. *(Id.)*.

33.     On November 17, 2010, after this meeting with Chaplain Pall,
Plaintiff sent a request slip to Superintendent's Assistant Lucas,
asking to withdraw  Grievance No. 342441. A true and correct
copy of this request slip is attached to the Declaration of Robin
Lucas as Exhibit I-2.  (*See also* Ex. I, ¶ 9).

---

[10]There is no dispute with respect to the PA DOC's 3-step administrative grievance
process under DC-ADM 804. Paragraphs 25-27 of Defendants' SMF (Doc. 28) contains the
DOC's administrative grievance process.

34.     On November 19, 2010, Grievance No. 342441 was formally withdrawn, per Plaintiff 's request.  (*See* Grievance Response dated November 19, 2010, a true and correct copy of which is attached to the Appendix as Exhibit J; *see also* Ex. B, ¶ 13; Ex. I, ¶ 10).

35.     Plaintiff did not pursue [Grievance No. 342441] through the appeal process. (*See* Ex. I, ¶ 10; Ex. H, ¶ 9).

36.     Plaintiff did not file any other grievance related to the claims that form the basis of this lawsuit.  (*See* Ex. I, ¶ 11). [*See also* Doc. 43, p. 4,  ¶ 19.]

In *Banks  v. Lappin*, 2009 WL 2486341, *3  (M.D. Pa.), the Court stated:

> Prisoners must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or the relief sought. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).
> Furthermor**e, courts are not permitted to "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."** *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998)); *see also Woodford v. Ngo,* 548 U.S. 81, 92-94, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (explaining that the PLRA mandates that inmates "properly" exhaust their claims before filing suit in federal court).

*See also Savage v. Judge,* 644 F.Supp. 2d 550, 564 (E.D. Pa. 2009).

The law is clear that Plaintiff was required to exhaust his administrative remedies before he filed his instant action.  *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, * 3 (M.D. Pa.).   The PLRA provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C.

§ 1997e(a).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

The Third Circuit Court of Appeals, has held that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action.  *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002); *Hemingway v. Ellers*, 2008 WL 3540526, *9.  The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted).  The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded.  *Id.*

Pennsylvania's DOC Grievance System is a three-part process.[11]  *See Booth v. Churner*, 206 F.3d 289, 293 (3d Cir. 2000), *aff'd on other grounds*, 532 U.S. 731 (2001) (holding that excessive force is a prison condition subject to the PLRA's exhaustion requirement).  First, an inmate must file an initial grievance specifying the incident in question, persons who may have helpful information, and the relief sought.  If the initial grievance is denied an inmate must then appeal to the Superintendent. Subsequently, if an inmate's appeal to the Superintendent is denied he must appeal to the Secretary's

---

[11]Defendants' evidence includes the DOC Policy Statement regarding the Inmate Grievance System.  (Doc. 29, Ex. H-1).

Office of Inmate Grievances and Appeals (SOIGA). *Id*. Thus, pursuant to *Banks*, an inmate must complete all three parts to establish that he has exhausted his administrative remedies. *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential)(citation omitted). Failure to complete any component of the administrative process will preclude an inmate's claim in federal court. *Id*.

Defendants' undisputed evidence show that Plaintiff failed to properly exhaust his DOC administrative remedies regarding his remaining claims against Defendants. (Doc. 28, ¶'s 25-36). Also, as mentioned above, there is no dispute that Plaintiff failed to file a grievance regarding his hair length exemption prior to his Grievance No. 342441 filed on November 10, 2010, after his return to SCI-Dallas. (Doc. 29, Ex. I, Lucas Declaration, ¶'s 6-7 & Doc. 43, p. 4, ¶ 19). The issue which Plaintiff raises is that since he was transferred by the DOC to a prison in Virginia out of Pennsylvania, the administrative remedy procedure of the DOC was not available to him while he was confined in Virginia and, that this prevented his exhaustion of his constitutional claims in this civil rights action. Plaintiff admits that he voluntarily withdrew his November 10, 2010, Grievance No. 342441, because he filed this grievance after he was returned from Virginia to SCI-Dallas "for purposes of obtaining a religious hair-length exemption." (Doc. 43, p. 4, ¶ 17). Plaintiff states that the issues he raised in his Grievance No. 342441 filed after he was returned to SCI-Dallas were not related to his instant claims since his instant claims occurred "immediately before and on the day that [he] was transferred to Virginia." (*Id*., ¶ 18). However, Plaintiff states that "[he] requested a Pennsylvania D.O.C. grievance form while housed in Virginia and was told that none were available." Plaintiff then states that he "was unable to file any grievances related to the conduct that form[s] the basis of this civil action because

DC-ADM 804 § VI(5) requires that a grievance be submitted to the Facility Grievance Coordinator using that DC-ADM 804, Part 1., No[.] DC-ADM, Part 1 (grievance forms) were made available to Pennsylvania inmates being housed in Virginia." (*Id.*, ¶ 19). Plaintiff concludes that "[b]ecause no grievance procedure were available to [him] while being housed in Virginia, [he] has exhausted all administrative remedies." (*Id.*, ¶ 20 & Doc. 42, pp. 5-6).

We agree with Defendants that even if Plaintiff's contentions are correct, "the [DOC] grievance process was still available to Plaintiff, as he could have attempted to file a grievance [regarding his present claims] upon his return from Virginia." (Doc 44, p. 3). As Defendants correctly point out (Doc. 44, p. 3), DC-ADM 804, Section VI. B. 3, provides that extensions of time for fling a grievance "will be made only where the inmate notifies the Facility Grievance Coordinator of the reason for the delay in filing and the Facility Grievance determines that the delay in filing was caused by: a. a temporary transfer from the facility where the grievance should have been filed: b. a permanent transfer to another facility from the facility where the grievance should have been filed[.]" (Doc. 29, Ex. H-1, p. 6). *See Hall v. Shannon*, 2012 WL 1144635, *2 (M.D. Pa. 4-5-12)("Compliance with state procedural rules dealing with inmate grievances is an issue of state law, not federal law.")(citing *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). Defendants concede that it is within the  Facility Grievance Coordinator's discretion as to whether he or she would allow a grievance to be filed outside of the usual 15-day time period.  (Doc. 44, p. 3). *See Hall v. Shannon*, 2012 WL 1144635, *4 ("DC-ADM 804 [Section VI. B. 3] contemplates an extension if the Facility Grievance Coordinator decides that the delay in filing the grievance 'was caused by' the transfer."). However, we agree with Defendants that "the grievance process would not be rendered unavailable until the [Facility Grievance Coordinator]

expressly rejects a grievance under [ DC-ADM 804, Section VI. B. 3]." (*Id.*, p. 4). There is no dispute that Plaintiff did not attempt to file a grievance upon his return to SCI-Dallas regarding his present claims despite being outside of the 15-day time period as he clearly could have under  DC-ADM 804, Section VI. B. 3.   We find, as Defendants contend (*Id.*), that in light of the  important policy considerations regarding the exhaustion requirement, Plaintiff was obliged to at least attempt to file a grievance  regarding his present claims  under  DC-ADM 804, Section VI. B. 3 when he was returned to SCI-Dallas.   Since Plaintiff did not, we find that he cannot now claim that his DOC administrative remedies were unavailable.    *See Hall v. Shannon*, 2012 WL 1144635, *4("state procedural rules dealing with inmate grievances are a matter of state law, not federal law").    Thus, we concur with Defendants that Plaintiff has procedurally defaulted his present First Amendment claims and that they are barred.  As such, we will recommend that Defendants' Summary Judgment Motion be granted with respect to both of Plaintiff's remaining First Amendment claims against all three Defendants, Zackarauskas, Pall and Putnam.

Since the exhaustion issue is a threshold issue and we find that it is undisputed Plaintiff failed to exhaust his DOC administrative remedies, we do not address Defendants' second argument that their evidence shows they did not violate Plaintiff's constitutional  rights.  *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06); *Hookey v. Lomas*, 2010 WL 936230, *6 (M.D. Pa. 3-15-10).[12]

---

[12]Also, as discussed above, Plaintiff concedes that Defendant Zackarauskas is entitled to summary judgment since he had no personal involvement with respect to his claims.

**VI.  Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendants' Summary Judgment

Motion **(Doc. 26)** be granted with respect to both of Plaintiff Morales' remaining First Amendment

claims against all three Defendants, Zackarauskas, Pall and Putnam, and that Judgment be entered in

favor of Defendants and against Plaintiff.




           s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 7, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD T. MORALES,                    :        CIVIL ACTION NO. **1:CV-11-0692**
                                       :
              Plaintiff                :        (Judge Caldwell)
                                       :
        v.                             :        (Magistrate Judge Blewitt)
                                       :
CHRIS PUTNAM, et al.,                  :
                                       :
              Defendants               :

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 7, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


　s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 7, 2012**